
IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
February 22, 2017 Session

**STATE OF TENNESSEE v. GREGORY T. PHELPS**

**Appeal from the Criminal Court for Knox County**
**No. 104306A    G. Scott Green, Judge**

---

**No. E2016-00918-CCA-R3-CD**

---

The Defendant, Gregory T. Phelps, appeals from the Knox County Criminal Court's revocation of his probation for his convictions for felony drug possession and unlawful possession of a firearm and order that he serve his effective four-year sentence in confinement. The Defendant contends that the trial court abused its discretion by revoking his probation. We affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

ROBERT H. MONTGOMERY, JR., J., delivered the opinion of the court, in which JAMES CURWOOD WITT, JR., and NORMA MCGEE OGLE, JJ., joined.

Forrest L. Wallace, Knoxville, Tennessee, for the appellant, Gregory T. Phelps.

Herbert H. Slatery III, Attorney General and Reporter; Robert W. Wilson, Assistant Attorney General; Charme P. Allen, District Attorney General; and Philip Morton, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

On October 24, 2014, the Defendant was indicted for criminal trespass, unlawful possession of a firearm, and felony drug possession. On July 28, 2015, the Defendant pleaded guilty as charged to the firearm- and drug-related offenses, and he received concurrent four-year and one-year sentences, respectively, to be served on probation. A transcript of the guilty plea hearing is not included in the appellate record. On August 14, 2015, a probation violation report was filed with the trial court, alleging that the Defendant's August 5, 2015 drug screen was positive for amphetamine, methamphetamine, oxycodone, and marijuana. The report also alleged that the Defendant admitted using marijuana and oxycodone, that the Defendant signed an "admission form," that the Defendant denied using methamphetamine, and that a laboratory analysis showed the presence of amphetamine,

methamphetamine, oxycodone, oxymorphone, and marijuana.  An arrest warrant for the violation was issued on August 14, 2015.  On February 3, 2016, the probation violation warrant was amended to include additional allegations that the Defendant was arrested on January 21, 2016, in Georgia for felony possession of a controlled substance and unlawful possession of a firearm, that the Defendant left Tennessee without the consent of his probation officer, and that the Defendant had not reported to his probation officer since August 2015.

At the revocation hearing, Cobb County Georgia Sheriff's Deputy Tarver Mygatt testified that on January 21, 2016, the Defendant was brought to the detention center after being arrested for possession of a firearm while being a convicted felon.  Deputy Mygatt stated that the next day, he smelled marijuana coming from three cells and that he informed his supervisor, Sergeant Wilson, who ordered all inmates in the housing unit to undergo a strip search and a "shake down."

Deputy Mygatt testified that during the Defendant's strip search, a plastic "baggy" was found inside the Defendant's rectum.  Deputy Mygatt confiscated the bag and said that based upon his training, the bag contained approximately two grams of marijuana and three pills.  He said that he took the pills to the detention center's pharmacy and that the nurse identified the pills as Percocet and Oxycodone.  Deputy Mygatt obtained an arrest warrant for misdemeanor possession of marijuana and for two counts of felony possession of the prescription pain medications.  He said the Defendant was not charged for introducing contraband into a penal facility.  He said the charges were still pending.

On cross-examination, Deputy Mygatt testified that the confiscated marijuana and pain medications were sent to the laboratory for analysis, that the analyses had been performed, and that he did not have a copy of the laboratory report.  He did not know whether the Defendant possessed a valid prescription for the pain medication, whether any other inmates were charged as a result of the search, or whether the Defendant had a cellmate.

Probation Officer Allison Joins testified that she began supervising the Defendant around December 2015 and that a probation violation report and arrest warrant for the violation had been prepared by that time.  Ms. Joins said that Dwight Brown was the Defendant's previous probation officer and that Mr. Brown's initial probation violation report alleged the Defendant had failed a drug screen on August 5, 2015.  Ms. Joins stated that her records showed the Defendant admitted using marijuana and pain medication but denied using methamphetamine. Ms. Joins said that a laboratory analysis report showed the Defendant was positive for amphetamine, methamphetamine, oxycodone, oxymorphone, and marijuana and that the failed drug screen occurred shortly after the Defendant pleaded guilty

and received probation. She agreed her records showed that the Defendant did not report to Mr. Brown after he failed the drug screen.

Ms. Joins testified that she received a telephone call informing her that the Defendant had been charged with new criminal offenses and that the Defendant was incarcerated in Georgia. She said that sometime after January 21, 2016, the Defendant called and informed her about the Georgia charges. She agreed the Defendant was initially charged in Georgia with unlawful possession of a firearm and said that the Georgia warrant reflected a Georgia address for the Defendant. She said that travel outside Tennessee without a probation officer's consent violated the conditions of the Defendant's probation.

On cross-examination, Ms. Joins testified that when she began supervising the Defendant, he had already been classified as an absconder from probation and that she searched monthly to determine if the Defendant had been arrested. She acknowledged she had not called the Defendant's last known telephone number or sent a letter to his last known address. She said that after an arrest warrant for a probation violation was issued, she no longer performed home visits. She said she had never met the Defendant and did not know the address reflected on his state-issued Tennessee identification.

On redirect examination, Ms. Joins testified that the Defendant would have signed an admission form regarding his statement to Mr. Brown that the Defendant had used marijuana and pain medication in August 2015. She said, though, the form was not in her file.

The trial court found that the Defendant had violated the conditions of his probation. The court stated that without considering the Georgia matters, the State had proved that Defendant violated his probation because the Defendant had not reported to his probation officer since his initial August 5 meeting and because the Defendant tested positive for multiple controlled substances on August 5. The court found that the Defendant admitted to Mr. Brown that he had used controlled substances and that the laboratory analysis reflected the presence of multiple controlled substances.

The trial court found that the Defendant had no contact with his probation officer since August 5, 2015, and that the Defendant was extradited to Tennessee after his Georgia arrest. The court found that even if the Defendant were found not guilty of the Georgia firearm charge, Deputy Mygatt's testimony reflected that the Defendant was in possession of marijuana and pain medication after the Defendant was arrested for the firearm charge. The court found that the Defendant violated the conditions of his release, and it revoked the Defendant's probation.

In determining whether to order the Defendant to serve his sentence in confinement, the trial court questioned defense counsel about the Defendant's ability to comply with the

conditions of his release in the future. Counsel stated that although the court had "every right" to order the Defendant to serve his sentence, the Defendant's underlying drug addiction was the cause of the Defendant's conduct. Counsel argued that drug treatment programs inside the Department of Correction would not solve the Defendant's addiction but that the Defendant would benefit from the treatment programs inside the jail. Counsel requested that the Defendant be permitted to enroll in the jail programs to show the court the Defendant could maintain sobriety and that the court revisit this matter in a couple of months.

The Defendant told the trial court that he wanted another opportunity "to do it right." He admitted he "messed up." The Defendant said, though, that he told Mr. Brown he had used drugs but that he would pass all future drug screens because he "was getting his life together." He said that he did not have time to "deal with jail" and "letting [himself] down." He said he would show the court he could maintain sobriety if provided an opportunity. When the court asked why the Defendant stopped reporting to his probation officer, the Defendant said he became nervous and scared because he did not know the impact of failing the drug screen. Relative to the methamphetamine, he said he admitted to Mr. Brown that he had taken "Molly" a couple of days before the drug screen, which must have been the cause of the positive methamphetamine finding. He denied knowingly using methamphetamine.

The trial court found that the Defendant violated the conditions of his release because he had "an authority problem," not a drug problem. The Defendant agreed that the court previously instructed him to follow the rules of his release and that the probation officer's orders carried the same weight as an order from the court. The Defendant agreed that the trial court also told the Defendant what it would do if the Defendant did not follow the rules of probation.

The trial court found that the uncontradicted evidence at the hearing showed repeated probation violations. The court ordered the Defendant to serve his sentence in the Department of Correction. This appeal followed.

The Defendant contends that the evidence was insufficient to establish a probation violation. He argues that the testimony relative to the identity of the substances found in his rectum while in confinement in Georgia was conclusory and inadmissible hearsay and that the trial court's reliance on Deputy Mygatt's testimony in revoking the Defendant's probation violated principles of due process. Relative to the "technical" violations of failing a drug screen and leaving Tennessee without permission, the Defendant argues the State failed to present Mr. Brown to establish the Defendant failed a drug screen and left Tennessee without permission and that Ms. Joins's testimony was inadmissible hearsay. Relative to the firearm-related charge in Georgia, the Defendant argues that the only proof presented was the arrest warrant and that the warrant was insufficient to establish he violated his release by a preponderance of the evidence. The State responds that the trial court did

not abuse its discretion by revoking the Defendant's probation and ordering him to serve his sentence in confinement.

Our supreme court has concluded that a trial court's decision to revoke a defendant's probation "will not be disturbed on appeal unless . . . there has been an abuse of discretion." *State v. Harkins*, 811 S.W.2d 79, 82 (Tenn. 1991) (citing *State v. Williamson*, 619 S.W.2d 145, 146 (Tenn. Crim. App. 1981)). An abuse of discretion has been established when the "record contains no substantial evidence to support the conclusion of the trial judge that a violation of the conditions of probation has occurred." *State v. Delp*, 614 S.W.2d 395, 398 (Tenn. Crim. App. 1980); *see State v. Shaffer*, 45 S.W.3d 553, 554 (Tenn. 2001); *State v. Grear*, 568 S.W.2d 285, 286 (Tenn. 1978). When a trial court finds by a preponderance of the evidence that a defendant has violated the conditions of probation, the court "shall have the right . . . to revoke the probation." T.C.A. § 40-35-311(e)(1) (2014). After revoking a defendant's probation, the trial court may return a defendant to probation with modified conditions as necessary, extend the period of probation by no more than two years, order a period of confinement, or order the defendant's sentence into execution as originally entered. T.C.A. §§ 40-35-308(a), (c), -310 (2014). "In probation revocation hearings, the credibility of witnesses is for the determination of the trial judge." *Carver v. State*, 570 S.W.2d 872, 875 (Tenn. Crim. App. 1978) (citing *Bledsoe v. State*, 378 S.W.2d 811, 814 (Tenn. 1965)).

The record reflects that the probation violation report and the warrant alleged that the Defendant had violated multiple conditions of his probation. The trial court found that the Defendant violated the conditions of his probation by failing a drug screen on August 5, 2015, and by failing to report to his probation officer after the August 5 meeting. At the revocation hearing, the Defendant told the trial court that he admitted to his original probation officer, Mr. Brown, that he had taken drugs a couple of days before the drug screen and that he stopped reporting to his probation officer because he knew he failed the drug screen. The Defendant's current probation officer, Ms. Joins, had never met the Defendant because he had absconded from supervision before she became his probation officer in December 2015. Furthermore, the record reflects that the Defendant's traveling outside Tennessee was not approved by any probation officer, and Ms. Joins's credited testimony reflects that the Defendant's presence in Georgia was a violation of his release. We note that reliable hearsay is admissible at probation revocation hearings when the opposing party has a fair opportunity to rebut any hearsay evidence. *See* T.C.A. § 40-35-209(b); *State v. Wall*, 909 S.W.2d 8, 10 (Tenn. Crim. App. 1994). The Defendant confirmed that he failed the drug screen and that he failed to report to his probation officer. *See* T.C.A. § 40-35-209(b); *Wall*, 909 S.W.2d at 10. This evidence alone was sufficient to support the trial court's finding that the Defendant had violated his probation. We note that the trial court found the Defendant violated his probation regardless of the Georgia matters.

In any event, the evidence also supports a finding that the Defendant committed a new criminal offense by possessing a controlled substance while inside a Georgia detention facility. Deputy Mygatt's credited testimony reflects that he smelled marijuana inside the Defendant's housing unit, that Deputy Mygatt was ordered to strip search all of the inmates in the housing unit, and that Deputy Mygatt found a bag inside the Defendant's rectum. Deputy Mygatt stated that based upon his training, he believed the bag contained marijuana and that the bag also contained three pills, which he could not identify. *See State v. White*, 269 S.W.3d 903, 906-907 (Tenn. 2008). Deputy Mygatt's testimony that the detention center nurse identified the pills and that a firearm-related charge led to the Defendant's Georgia incarceration notwithstanding, the evidence is sufficient to support a finding that the Defendant violated the conditions of his probation by possessing marijuana. Although a laboratory analysis of the substance was not presented at the hearing, the State was required to prove by a preponderance of the evidence, not beyond a reasonable doubt, that the Defendant violated the law. *See Harkins*, 811 S.W.2d at 83; s*ee also State v. Catherin Vaughn*, No. M2009-01166-CCA-R3-CD, 2010 WL 2432008, at *3 (Tenn. Crim. App. June 14, 2010); *State v. Andrew B. Edwards*, No. W1999-01095-CCA-R3-CD, 2000 WL 705309, at *3 (Tenn. Crim. App. May 26, 2000). The State satisfied its burden by showing the Defendant possessed marijuana, and the Defendant's due process rights were not violated.

We conclude that the record supports the trial court's finding that the Defendant violated the conditions of his probation and that the court did not abuse its discretion by revoking the Defendant's probation. *See* T.C.A. § 40-35-311(e)(1). Once the court revoked the Defendant's probation, it had the authority to order the Defendant to serve his sentence in confinement. *See* T.C.A. §§ 40-35-308(a), (c), -310. We note that during the sentencing hearing, defense counsel conceded that the trial court had "every right" to order the Defendant to serve his sentence in confinement. The Defendant is not entitled to relief.

Based on the foregoing and the record as a whole, we affirm the judgment of the trial court.

_____
ROBERT H. MONTGOMERY, JR., JUDGE